# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

| | | |
|---|---|---|
| KAREN KREBS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:19-cv-634 |
| | ) | |
| v. | ) | |
| | ) | Judge Stadtmueller |
| MICHAEL GRAVELEY, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
## OF HER MOTION FOR SUMMARY JUDGMENT
## AND A PERMANENT INJUNCTION

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................... 1

MATERIAL FACTS ......................................................................................... 2

I.    The Name-Change Statute ....................................................................... 2

II.   Plaintiff Karen Krebs ............................................................................... 3

III.  Defendant Michael Graveley ................................................................... 4

IV.   The Registration Statute .......................................................................... 5

V.    The Department of Corrections' Interpretation and Application
      of the Name-Change Statute ................................................................... 6

VI.   Searches of the Registry .......................................................................... 8

VII.  The Government Purposes for the Registration and Name-Change
      Statutes ...................................................................................................... 8

ARGUMENT ................................................................................................... 10

I.    Summary Judgment Standard ................................................................ 10

II.   The Name Change Statute Violates the First Amendment ................. 10

      A.    The Name-Change Statute Impermissibly Compels Speech ............. 11

      B.    The Statute Violates the First Amendment Because It
            Impermissibly Restricts Speech in a Limited Public Forum ............. 16

      C.    The Name-Change Statute Fails Scrutiny Under the O'Brien Test ... 19

      D.    Even If Heightened Scrutiny Does Not Apply, the Statute Fails
            First Amendment Scrutiny ................................................................. 20

III.  Plaintiff Is Entitled to Permanent Injunctive Relief .................................. 21

      A.    Plaintiff Is Suffering Irreparable Harm in the Absence of
            Injunctive Relief and Lacks an Adequate Remedy at Law ................ 22

      B.    The Balance of Harms Tips in Plaintiffs' Favor ................................ 23

CONCLUSION ...................................................................................... 24

# TABLE OF AUTHORITIES

**Case Law**

*ACLU v. Alvarez*, 679 F.3d 583 (7th Cir. 2012) ................................23

*Albiero v. City of Kankakee*, 246 F. 3d 927 (7th Cir. 2001) ...............10

*Bell v. Keating*, 697 F.3d 445 (7th Cir. 2012)....................................22

*Board of Trustees of State Univ. of N. Y. v. Fox*, 492 U.S. 469 (1989) .............20

*Council 31 of the AFSCME v. Quinn*, 680 F.3d 875 (7th Cir. 2012) ................4

*Elrod v. Burns*, 427 U.S. 347 (1976)...................................................22

*Ezell v. City of Chicago*, 651 F. 3d 684 (7th Cir. 2011) ....................................22

*Ex parte Young*, 209 U.S. 123 (1908).....................................................4

*Good News Club v. Milford Cent. Sch.*, 533 U.S. 98 (2001)..............................16

*Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston*, 515 U.S. 557 (1995)..........................................................................12

*Illinois Migrant Council v. Pilliod*, 540 F.2d 1062 (7th Cir. 1976) ..................22

*In re Giishig,* No. A08-0010, 2008 Minn. App. Unpub. LEXIS 1391 (Dec. 2, 2008)..................................16

*In re R.M.J.*, 455 U.S. 191 (1982) .......................................................20

*Janus v. AFSCME, Council 31*, 138 S. Ct. 2448 (2018) ....................................11

*Joelner v. Vill. Of Wash. Park*, 378 F.3d 613 (7th Cir. 2004). ...........................23

*Klinger v. Conan Doyle Estate, Ltd.*, 988 F. Supp. 2d 879 (N.D. Ill. 2013).......22

*Mathias v. Accor Economy Lodging, Inc.,* 347 F. 3d 672(7th Cir. 2003)...........23

*McCutcheon v. FEC*, 572 U.S. 185 (2014) ..........................................................20

*NIFLA v. Becerra*, 138 S. Ct. 2361 (2018) ........................................................12

*Plummer v. Am. Inst, of Certified Pub. Accountants*,
    97 F.3d 220 (7th Cir. 1996)...........................................................................22

*Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015)...............................................12

*Riley v. Nat'l Fed'n of Blind*, 487 U.S. 781 (1988) ......................................12, 13

*Rosenberger v. Rectors and Visitors of the University of Virginia*,
    515 U.S. 819 (1995)................................................................................17, 18

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*,
    547 U.S. 47 (2006) .......................................................................................12

*Salaam v. Lockhart*, 905 F.2d 1168 (8th Cir. 1990) ...........................................1

*United States v. O'Brien,* 391 U.S. 367 (1968) ...................................10, 19-20

*Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*,
    135 S. Ct. 2239 (2015)...................................................................................16

*West Virginia Board of Education v. Barnette*, 319 U.S. 624 (1943)................11

*Wooley v. Maynard*, 430 U.S. 705 (1977).............................................................11

## Statutes

U.S. Const. Amend. 1 ..........................................................................*passim*

Wis. Stats. §301.45 (the "Registration Statute") ................................*passim*

Wis. Stats. §301.47 (the "Name-Change Statute") .............................*passim*

Wis. Stats. §786.36 ("Changing Names, Court Procedure")............................17

Wis. Stats. §939.50 ("Penalties") ........................................................................2

iv

**Other Authorities**

Fed.R.Civ.P. 56(c)..............................................................................................1, 10

Fed.R.Civ.P. 65...................................................................................................1

Alan Wright *et al*., Federal Practice and Procedure (2d ed. 1995)....................22

## INTRODUCTION

Pursuant to Fed. R. Civ. Pro. 56 and 65, Plaintiff Karen Krebs[1] respectfully requests that this Honorable Court enter summary judgment in her favor on her claim that Wis. Stat. §301.47(2)(a) (hereinafter "the Name-Change Statute") violates the First Amendment as applied and enter a permanent injunction prohibiting Defendant from enforcing the statute against her.

Courts have long recognized that names carry a deeply personal expressive and communicative significance:

> A personal name is special. It may honor the memory of a loved one, reflect a deep personal commitment, show respect or admiration for someone famous and worthy, or, … reflect a reverence for God and God's teachings.

*Salaam v. Lockhart*, 905 F.2d 1168, 1170 (8th Cir. 1990). The expressive aspect of a name is particularly important for transgender individuals for whom a name communicates something fundamental about their identity, how they see themselves, and how they wish to be seen by others.

Plaintiff Karen Krebs is a transgender woman. For more than two decades, she has lived as a woman and used the name Karen. But pursuant to Wisconsin law, Karen is permanently prohibited from legally changing her name and obtaining a state ID bearing a name that matches her gender identity due to a 1992 conviction for which she is required to register as a sex offender.

The evidence reveals that application of the Name-Change Statute to Karen has

---

[1] Plaintiff's legal name is Kenneth Krebs. As explained in full below, Plaintiff is a transgender woman who has used the name Karen since the 1990s. Plaintiff has been prohibited from legally changing her name pursuant to the statute challenged herein. In this brief, Plaintiff employs her preferred name and gender pronouns.

no nexus to any public safety goal. According to the testimony of Wisconsin's own top registration official, Grace Knutson,[2] absolutely nothing would change about the information that appears on the state's sex offender registry if Karen were permitted to legally change her name. More broadly, the evidence reveals that the Name-Change Statute frustrates rather than advances the interests that are intended to be served by the state's sex offender registry—*i.e.*, making information about the whereabouts and identities of people who have been convicted of sex offenses accessible to the public.

## MATERIAL FACTS

### I. The Name-Change Statute

Wisconsin law makes it a Class H felony for anyone who is required to register as a sex offender with the state of Wisconsin to "change his or her name". Wis. Stat. §301.47(2)(a); Plf. Statement of Facts ("SOF") at ¶7.[3] A person who changes his or her name in contravention of the statute is subject to criminal prosecution and penalties including imprisonment for up to six years and/or a fine of up to $10,000.00. Wis. Stat. §939.50; SOF at ¶¶9, 10. The Name-Change Statute was enacted in 2003. SOF at ¶11.[4]

---

[2]    As the Director of Sex Offender Programs for the Wisconsin Department of Corrections, Knutson is responsible for overseeing the state's sex offender registry. SOF at ¶11. She has had that responsibility since 2000. *Id.*

[3]    All record citations in this brief are to Plaintiff's Statement of Uncontested Material Facts, filed simultaneously herewith. Each paragraph in Plaintiff's Statement of Uncontested Material Facts is supported by citations to the relevant evidence in the record.

[4]    The Name-Change Statute also prohibits anyone required to register as a sex offender from "[i]dentif[ing] himself or herself by a name unless the name is one by which the person

2

## II. Plaintiff Karen Krebs

Plaintiff Karen Krebs is a transgender woman. SOF at ¶24. At birth, Karen was given the name Kenneth Krebs. *Id*. She has not used that name since she came out as transgender in 1999. *Id*. For more than two decades, Plaintiff has lived as a woman and used the name Karen Krebs. *Id*. Plaintiff does not think of herself as Kenneth and does not identify with that name or with its implication—*i.e.*, that she is male. SOF at ¶25. Because of a 1992 conviction, Plaintiff is required to register as a sex offender with the state of Wisconsin for the rest of her life. SOF at ¶¶5, 26.

Plaintiff wants to legally change her name, but she refrains from seeking to do so because of the threat of arrest and prosecution for violation of the Name-Change Statute. SOF at ¶27. Not being able to legally change her name causes numerous problems in Plaintiff's life. SOF at ¶28. Plaintiff considers the name Karen to be of central importance to her self-expression and identity. The name Karen matches Plaintiff's gender-identity and accurately reflects who she is. *Id*. Conversely, the name Kenneth does not match Plaintiff's gender and does not accurately reflect her identity. *Id*.

Because Plaintiff cannot change her name legally, the name Kenneth appears on official documents, including Plaintiff's state ID, her bank accounts, medical records, tax forms, and mail. SOF at ¶29. This forces Plaintiff to disclose and respond to the name Kenneth in any situation where she must show a government-issued ID. *Id*. Plaintiff's inability to obtain an official ID with the name Karen

---

is identified with the department [of corrections]" on the registry. Wis. Stat. §301.47(2)(b); SOF at ¶8. Plaintiff does not challenge the constitutionality of Wis. Stat. §301.47(2)(b).

causes confusion and raises questions when Plaintiff applies for jobs, travels, interacts with medical professionals and government officials, and manages her finances. SOF at ¶30. Not having an official ID that matches her identity causes Plaintiff embarrassment and distress. *Id*. It forces Plaintiff to disclose and explain that she is transgender to strangers with whom she interacts at doctors' offices, the bank, and pharmacies, and it raises questions about the legitimacy of Plaintiff's government-issued ID because she does not appear and present as male. *Id*.

Plaintiff does not seek to conceal her identity or her criminal record by changing her name. SOF at ¶31. Plaintiff has reported both "Kenneth" and "Karen" to the Department of Corrections as names by which she is identified. *Id*. Both Karen and Kenneth are listed on the Registry as Plaintiff's names. SOF at ¶32. Kenneth is listed as Plaintiff's name, and Karen is listed as an alias. *Id*. If Plaintiff were permitted to legally change her name, she would still register both names with the state's sex offender registry. SOF at ¶34.

## III. Defendant Michael Graveley

Defendant Michael Graveley is the district attorney for Kenosha County, Wisconsin. Graveley is sued in his official capacity. Pursuant to Wis. Stats. §978.05, Graveley is responsible for "prosecut[ing] all criminal actions before any court" within Kenosha County. Graveley is thus the individual ultimately responsible for enforcing the Name-Change Statute against Plaintiff. He is thus a proper Defendant pursuant to *Ex parte Young*, 209 U.S. 123 (1908). *See Council 31 of the AFSCME v. Quinn*, 680 F.3d 875, 882 (7th Cir. 2012) (The *Ex parte Young* doctrine

"allows private parties to sue individual state officials for prospective relief to enjoin ongoing violations of federal law.") (citations omitted).

## IV. The Registration Statute

The Wisconsin Department of Corrections maintains a registry of individuals who have been convicted of qualifying sex offenses. Wis. Stats. §301.45 ("the Registration Statute"); SOF at ¶1. With respect to each registrant, the registry contains the individual's "name, including any aliases used by the person"; identifying characteristics such as "date of birth, gender, race, height, weight and hair and eye color"; "all addresses at which the person is or will be residing"; conviction information; and information concerning where the registrant is employed and/or attending school. *Id.* Individuals who have been convicted of qualifying sex offenses must register either for 15 years or for life, as determined by statute.

The requirement to register as a sex offender begins upon conviction, including while an individual is serving a term of imprisonment. SOF at ¶2. A registrant who is no longer under the supervision of the criminal justice system (*e.g.*, parole, extended supervision or probation) must register annually with the Wisconsin Department of Corrections. SOF at ¶3. In addition to the annual registration requirement, individuals subject to the Registration Statute must provide the Department of Corrections with "updated information within 10 days" whenever any of the information they are required to disclose changes. SOF at ¶4. A person who "knowingly fails to comply with any requirement to provide information"

5

required by the Registration Statute is guilty of a Class H felony and subject to penalties including imprisonment for up to six years and/or a fine of up to $10,000.00. SOF at ¶6.

## V. The Department of Corrections' Interpretation and Application of the Name-Change Statute

Grace Knutson is the Director of Sex Offender Programs for the Wisconsin Department of Corrections and is responsible for overseeing the sex offender registry, including the publicly available registry website. SOF at ¶12. Knutson has worked for the Department of Corrections since 1992 and has been responsible for administration of the Wisconsin Sex Offender Registry since 2000. *Id*.

According to Knutson, at the time of initial registration, an individual subject to the Registration Statute must disclose all names by which they are known, including but not limited to any nicknames, aliases, or names they are called socially. SOF at ¶13. The Department lists the name that appears on the individual's judgment of conviction as the primary name. SOF at ¶14. Any other names or nicknames are listed as "aliases." SOF at ¶15. The Department generates a list of aliases (including nicknames) from the registrant's criminal history and whatever names, aliases or nicknames the registrant self-reports. *Id*. Once a name or alias is listed on the registry, the Department never removes it, even if the registrant reports that he no longer uses the name, alias or nickname. SOF at ¶16.

Prior to the passage of the Name-Change Statute, registrants were permitted to go by new names or nicknames as long as they properly disclosed them to the Department of Corrections. SOF at ¶20. When an individual disclosed a new name

6

or nickname, the Department would add the new name to the list of "aliases." *Id.* Since the passage of the Name-Change Statute, the Department of Corrections has stopped including on the registry new names or nicknames that registrants disclose. SOF at ¶21. Now, if a registrant reports to the Department of Corrections that people are calling him or her something other than one of the names that currently appears on the registry (for example, a new nickname), the Department will not include the new name on the registry and will tell the registrant not to use the new name. *Id.*

If an individual's registration requirement began prior to passage of the Name-Change Statute, the Department interprets the Name-Change Statute as allowing the individual to identify him or herself by any name by which he or she was identified on the registry prior to passage of the law. SOF at ¶22. If an individual's registration requirement began after the passage of the Name-Change Statute, the Department interprets the Name-Change Statute as prohibiting the individual from adding any new nicknames or aliases after the initial registration. SOF at ¶23.

Plaintiff registered the name "Karen" with the Department of Corrections prior to the enactment of the Name-Change Law. According to Grace Knutson, if Plaintiff were permitted to legally change her name to "Karen," the Department would not change anything about the information that is listed on the Sex Offender Registry website. SOF at ¶35. That is, "Kenneth" would still appear as Plaintiff's name because that is the name that appears on Plaintiff's judgment of conviction, and "Karen" would still appear as an alias. *Id.*

## VI.     Searches of the Registry

Members of the public can search the website for the Wisconsin Sex Offender Registry by name or geography. SOF at ¶17. In particular, one can type in (1) a zip code to see a list of every registrant residing within that zip code; (2) an address to see a list of every registrant residing within a specified radius of that address; or (3) a name to see whether a particular person searched is registered. *Id*. The "search by name" function on the registry website queries both the "name" and "alias" fields. SOF at ¶18. The "search by name" function requires a last name to be entered, but a first name is optional. SOF at ¶19.

If an individual searches the registry for "Karen Krebs," "Kenneth Krebs" or simply for the last name "Krebs," Plaintiff's listing on the registry is returned as a result. SOF at ¶33. If Plaintiff were permitted to legally change her name to "Karen," the information that members of the public would be able to access about her criminal conviction, residential information, and other identifying characteristics through the Registry website would be unchanged. SOF at ¶36. Members of the public would be directed to the same information if they searched for Plaintiff as "Karen Krebs" or "Kenneth Krebs." *Id*.

## VII.    The Government Purposes for the Registration and Name-Change Statutes

The homepage of Wisconsin's Sex Offender Registry states that the purposes of the registry are "to make information more easily available and accessible" to the public and to "furnish the public with information regarding convicted sex

offenders." SOF at ¶37. Knutson agreed that those are the purposes of the registry website. *Id*.

Knutson testified that the government purposes of registration would not be frustrated if Plaintiff were allowed to legally change her name to "Karen Krebs." SOF at ¶38 ("Q: You've identified the purposes of registration as educating the public and making information available to the public ... Would any of those purposes be frustrated if Karen Krebs were allowed to legally change her name to 'Karen'? A. No.")

Knutson testified that it is her understanding that the purposes of the Name-Change Statute are to prohibit registrants from trying to remain anonymous in the community; to allow crime victims to track the whereabouts of the person who committed an offense against them; to allow law enforcement to determine whether someone is required to register; and to make information available to the general public. SOF at ¶39. Knutson testified that these concerns could be adequately addressed by enforcement of the requirement that registrants must disclose all names by which they are known to the department. SOF at ¶40.

Knutson testified that the registry is potentially made less accurate and less complete by the Name-Change Statute. SOF at ¶41. This is so in two ways. One, it results in exclusion from the registry of new names or nicknames that a registrant self-reports. *Id*. Two, it has the potential to be confusing to members of the public if they are looking for someone on the registry who appears and presents as a woman,

and uses a woman's name, but the registration information appears under a male name. *Id.*

## ARGUMENT

### I. Summary Judgment Standard

Summary judgment is proper where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." *Albiero v. City of Kankakee*, 246 F. 3d 927, 931 (7th Cir. 2001) (*citing* Fed.R.Civ.P. 56(c)).

### II. The Name-Change Statute Violates the First Amendment

The Name-Change Statute violates the First Amendment as applied to Plaintiff because it fails to strike a proper balance between Plaintiff's speech rights and legitimate government objectives. This is so in four ways. First, the statute violates the First Amendment because it compels Plaintiff to engage in speech and does not satisfy strict scrutiny. Second, if analyzed as a restriction on speech in a limited public forum, the statute fails because the restrictions it imposes are not reasonable in light of the purpose for which the government has established the forum. Third, if analyzed as a regulation of expressive conduct under *U.S. v. O'Brien,* 391 U.S. 367 (1968), the statute fails because it imposes a restriction on expression greater than is essential to further an important or substantial governmental interest. Finally, if the statute is not subjected to any form of heightened scrutiny, it fails because it is not appropriately tailored to any government interest—in fact, it undermines rather than promotes the government purposes that have been put forth to justify it.

10

**A. The Name-Change Statute Impermissibly Compels Speech**

The Supreme Court has repeatedly affirmed that the First Amendment protects "both the right to speak freely and the right to refrain from speaking at all." *Janus v. AFSCME, Council 31*, 138 S. Ct. 2448, 2463 (2018) (quoting *Wooley v. Maynard*, 430 U.S. 705, 714 (1977)). In *Janus*, the Court explained that "measures compelling speech are at least as threatening" to core First Amendment values as "restrictions on what can be said." *Id.* at 2464. The Court wrote as follows:

> When speech is compelled, … individuals are coerced into betraying their convictions. Forcing free and independent individuals to endorse ideas they find objectionable is always demeaning, and for this reason, one of our landmark free speech cases said that a law commanding 'involuntary affirmation' of objected-to beliefs would require 'even more immediate and urgent grounds' than a law demanding silence.

*Id.* (*citing West Virginia Board of Education v. Barnette*, 319 U.S. 624, 633 (1943)).

As shown below, the Name-Change statute fails because it compels Plaintiff to engage in speech and is not narrowly tailored to advance a compelling government interest.

**1. The Name-Change Statute Compels Speech**

By prohibiting Plaintiff from legally changing her name, the government compels her to engage in speech to which she objects. In any situation where Karen must disclose and/or use her legal name—*e.g.*, applying for a job, filling out employment-related forms, paying bills, banking, obtaining medical care, travelling by train or plane, applying for government benefits, entering a building or facility where one must show a government ID—Plaintiff is forced to disclose and respond to a name that does not comport with who she is. Whenever Plaintiff shows her

government ID, she is forced to communicate information about herself and her identity that is false and to which she strongly objects—*i.e.*, that she is male and that her name is Kenneth. Relatedly, the statute compels Plaintiff to disclose and explain that she is transgender whenever she shows her government-issued ID, leading to embarrassing and uncomfortable conversations with strangers with whom she does not necessarily wish to discuss the fact that she is transgender. Thus, the Name-Change statute compels Plaintiff to engage in speech.[5]

### 2. The Name-Change Statute Fails Strict Scrutiny Because It Undermines Rather than Advances the State's Interests

Because it compels speech, the Name-Change Statute is necessarily "a content-based regulation of speech." *NIFLA v. Becerra*, 138 S. Ct. 2361, 2371 (2018); *see also Riley v. Nat'l Fed'n of Blind*, 487 U.S. 781, 795 (1988) ("Mandating speech that a speaker would not otherwise make necessarily alters the content of the speech."). As a result, it can only be upheld if it satisfies strict scrutiny. *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226 (2015). Under strict scrutiny, the state bears the burden of showing that a compelling government interest is at stake and that it adopted the least restrictive means of achieving that interest. *Id.*; *see also Riley*, 487 U.S. at 800

---

[5] The fact that the compelled speech does not communicate an ideological message doesn't change the analysis. As the Supreme Court explained in *Riley*, "cases cannot be distinguished because they involve compelled statements of opinion while here we deal with compelled statements of 'fact': either form of compulsion burdens protected speech." 487 U.S. 781, 797–98 (1988) (holding that professional fundraisers could not be forced to disclose to potential donors the percentage of donations that the fundraisers actually turned over to charity); *see also*, *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 61 (2006) ("[C]ompelled statements of fact . . ., like compelled statements of opinion, are subject to First Amendment scrutiny."); *Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston*, 515 U.S. 557, 573 (1995) (explaining that the compelled speech doctrine applies "to statements of fact the speaker would rather avoid").

(government may "not dictate the content of speech absent compelling necessity, and then, only by means precisely tailored.")

Here, the state's interests consist of making accurate information about criminal convictions available via the state's sex offender registry and preventing individuals who are required to register from concealing the fact that they have been convicted of sex offenses by assuming new names. SOF at ¶¶37, 39. Assuming *arguendo* that such interests are properly seen as compelling, the statute fails strict scrutiny because an absolute and permanent prohibition on name changes is not a narrowly tailored means of achieving those goals.

There are less burdensome ways the government could achieve its aims than permanently prohibiting Plaintiff from changing her name. In particular, the government could require Plaintiff and others similarly situated to register both their new and old names so that a search for either the current or former name would return information concerning the person's criminal history and would direct the person who searches the registry to the relevant criminal records. Such a requirement is already enshrined in the Registration Statute itself, which requires registrants to disclose their names and any aliases and to provide the Department of Corrections with "updated information within ten days" whenever any of their information changes. SOF at ¶¶1-4. Grace Knutson, the Wisconsin Department of Corrections' Director of Sex Offender Services, testified that prior to the passage of the Name-Change Statute, registrants were permitted to use new names or nicknames provided that they properly disclosed them to the Department of

Corrections for inclusion on the registry within ten days. SOF at ¶20. If a registrant reported a new name, the Department would include the name as an alias on the registry and "it wasn't an issue." *Id.*

Indeed, Plaintiff has already registered both "Kenneth" and "Karen" with the state. SOF at ¶31, 32. Thus, searching the registry for "Karen Krebs," "Kenneth Krebs," or "Krebs" returns the same information about Plaintiff. SOF at ¶33. Knutson testified that if Plaintiff is permitted to legally change her name to Karen, the exact same information would remain on the registry and the public would have access to precisely the same information about her criminal background. SOF at ¶¶35, 36.

Tellingly, Ms. Knutson testified that the goals of informing the public and preventing individuals from concealing their status as sex offenders would be accomplished just as effectively by requiring registrants to report any changes in names to the Department:

> Q: [C]an't the concern about someone trying to be anonymous in the community by changing their name be alleviated by requiring the person to register any changes in name with the department?
>
> A: If the statute allowed a person to change their name legally, that's what we'd put in the registry.
>
> Q: And that would address the concerns about the person concealing information that they are a registrant by using a different name, true?
>
> A: Correct.

SOF at ¶40. In fact, Ms. Knutson candidly admitted that the Name Change Statute has the potential to make the registry less accurate and less informative by

14

excluding relevant information about names or nicknames others may call the registrant in the community. SOF at ¶41. For example, prior to the enactment of the Name-Change Statute, if a registrant reported that people were referring to him or her with a new name or nickname, the Department would add that information to the registry, which would allow members of the public to find the registrant if they searched for that nickname. SOF at ¶20. Since the passage of the Name-Change Statute, the Department now excludes from the registry information about new names or nicknames that registrants disclose, which Knutson admitted has the potential to make the registry less complete and less accurate. *Id*. at ¶21, 41.

A statute that restricts expression in a manner that undermines rather than advances the government interests it is meant to serve cannot be seen as narrowly tailored to serve a compelling government interest. Thus, the Name-Change Statute fails strict scrutiny.[6]

---

[6]    In addition to requiring a registrant who wishes to change his or her name to register both the new name and the previous name, there are other less restrictive alternatives available to advance the state's interests. For example, the state could do any of the following:

(1) enforce the existing sex offender registration statute which makes it a felony to fail to register changes to identifying information (*see* Wis. Stats. §301.45);

(2) permit a registrant who has lived in the community without committing a new offense for a specified period of time to petition for relief from the restriction set forth in the Name Change statute;

(3) enforce the existing law requiring prior publication of a name-change petition and giving interested members of the public an opportunity to object (*see* Wis. Stats. §786.36);

(4) adopt special procedures for name change requests by individuals who have been convicted of sex offenses *See In re Giishig*, No. A08-0010, 2008 Minn. App. Unpub. LEXIS 1391, at *6-9 (Dec. 2, 2008) (explaining that Minnesota's name change statute allows a prosecuting authority to object to a proposed name change by a person who has been

15

**B. The Statute Violates the First Amendment Because It Impermissibly Restricts Speech in a Limited Public Forum**

When the government restricts private speech occurring on government property, the Supreme Court's "forum analysis" applies. *Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 135 S. Ct. 2239, 2242 (2015). Where the government gives subsidy to certain types of speech on government property other than a traditional public forum (such as a public park or sidewalk), it creates a so-called "limited public forum." *Id.* Under the limited public forum doctrine, the government may regulate speech as long as any restrictions on speech within the forum are "reasonable in light of the forum's purpose and [do] not constitute viewpoint discrimination." *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106 (2001).

Wisconsin's Name-Change Statute fails under a limited public forum analysis because the state has created a limited public forum for self-expression through government-authorized name changes, and the restrictions it imposes are not reasonable in light of the purpose of the forum it has created.

**1. Wisconsin Has Created a Limited Public Forum by Establishing a Process Through Which One Can Change His or Her Name**

Wisconsin has an established legal process through which one can petition the court to change his or her name. Wis. Stats. §786.36. Pursuant to this statute, "any

---

convicted of a felony and then requires a hearing to determine "whether [the individual's] name change would compromise public safety" and "whether failure to allow the name change would infringe on a constitutional right of [the individual]."); or

(5) require individuals who wish to change their names to submit to a criminal background check in connection with any petition for a name change and require the court that authorizes the name change to inform the registration authorities when a registrant legally changes his or her name.

16

resident of [Wisconsin], … upon petition to the circuit court of the county where he or she resides … may, if no sufficient cause is shown to the contrary, have his or her name changed or established by order of the court." *Id*. The statute provides that notice must be published of an intended name change in advance, and the court can deny a petition for a name change if "sufficient cause" is shown—for example, that the person seeks to change his name to unfairly compete with another practitioner in a licensed profession or to defraud the public. Wis. Stats. §786.36(3).

This statutory process should be seen as creating a limited public forum. The Supreme Court explained in *Rosenberger v. Rectors and Visitors of the University of Virginia*, 515 U.S. 819, 828-31 (1995), that not all limited public forums are physical places. In *Rosenberger*, the Court applied the limited public forum doctrine to the university's student-activities fund, finding that "the [fund] is a forum more in a metaphysical than in a spatial or geographic sense, but the same principles are applicable." *Id*. at 830. The Court held that the University violated the First Amendment when it refused to provide funds dedicated to supporting student journalism to a Christian student newspaper because this restriction was not reasonable in light of the forum's purpose—to facilitate student publications that addressed a variety of topics including "student news, information, opinion, entertainment, or academic communications." *Id*. at 824.

Similarly here, Wisconsin's legal process for changing one's name has created a limited public forum for expression.

### 2. The Restriction Imposed on Plaintiff's Ability to Change Her Name Is Not Reasonable In Light of the Forum's Purpose

Having created a limited public forum through which citizens can engage in government-sanctioned expression, the state may not restrict certain speech or certain speakers from participating in that forum unless the restriction imposed is reasonable in light of the forum's purpose.

The name-change law fails under this test because the speech in which Plaintiff seeks to engage—*i.e.*, changing her name to Karen Krebs—is perfectly compatible with the purpose for which the government established the legal process for changing one's name—*i.e.*, obtaining legal recognition for the name by which one prefers to be called absent "sufficient cause" for prohibiting the name change.

Here, there is no purpose served by prohibiting Plaintiff from accessing the state's process for legally changing one's name. As described above, Plaintiff is not seeking to evade her registration requirement or conceal her criminal history by changing her name. She would still register both her old and new names with the state, and anyone who seeks information concerning her offense, her registration history, and the information she reports to the state registry would still be able to access the exact same information. Thus, her speech is perfectly compatible with the purposes for which the state has established its name-change process, and the absolute prohibition imposed on her access to this forum violates the First Amendment.

18

**C. The Name-Change Statute Fails Scrutiny Under the *O'Brien* Test**

Third, if viewed as a restriction on expressive conduct, the Name-Change Statute fails under the test set forth in *United States v. O'Brien*, 391 U.S. 367 (1968), and its progeny. In *O'Brien*, the Supreme Court set forth a test for evaluating regulations of "non-speech conduct" that impose an "incidental" burden on expression. *Id*. at 376. *O'Brien* requires an analysis of the following four factors when a regulation of conduct burdens expression: (1) whether the regulation is "within the constitutional power of the government"; (2) whether the regulation "furthers an important or substantial governmental interest"; (3) whether the interest is "unrelated to the suppression of free expression"; and (4) whether the incidental restriction on expression is "no greater than is essential to the furtherance of that interest." *Id*. at 377.

The Name-Change Statute fails under this test. Plaintiff acknowledges that the statute likely meets the first and third elements—Wisconsin has the authority to regulate legal name changes and the statute's restrictions are not directly aimed at suppressing speech. But the law nonetheless fails the *O'Brien* test because it suppresses much more speech than is necessary to further an important government interest. A name has many communicative and expressive qualities, especially for Plaintiff and other transgender persons whose names communicate something essential about their identities. The name-change statute forever prohibits Plaintiff from obtaining legal recognition for her chosen name and a government ID with her chosen name. Such a severe burden is far greater than

19

needed to promote the state's interest in maintaining an accurate and useful sex offender registry. As set forth above, such an interest can be advanced just as effectively by requiring registration of both the old and new name and linking offense information to the individual's listing on the registry under the new name, which had been the practice prior to 2003.

### D. Even If Heightened Scrutiny Does Not Apply, the Statute Fails First Amendment Scrutiny

Finally, even if the Court does not apply any form of heightened scrutiny to the Name-Change Statute, the statute violates the First Amendment as applied to Plaintiff because it is not appropriately tailored to meet any government objectives. In *McCutcheon v. FEC*, 572 U.S. 185 (2014), the Supreme Court observed that even when strict scrutiny is not applicable, government regulations that impact speech must be appropriately tailored to their desired ends. *Id*. at 218. The Court wrote as follows:

> In the First Amendment context, fit matters. Even when the Court is not applying strict scrutiny, we still require 'a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is 'in proportion to the interest served,' … that employs not necessarily the least restrictive means but ... a means narrowly tailored to achieve the desired objective.

*Id*. at 218 (*citing Board of Trustees of State Univ. of N. Y. v. Fox*, 492 U.S. 469, 480 (1989) and *In re R.M.J.*, 455 U.S. 191, 203 (1982)).

Here, as described above, the Name-Change Statute imposes a harsh burden on Plaintiff's right to self-expression and subjects her to a lifetime of embarrassment, discomfort, and distress that comes with being identified as Kenneth—a name she

hasn't used for decades and that does not match her gender identity. Meanwhile, application of the statute to Plaintiff has no meaningful relationship to any public safety goal. Ms. Knutson, the state's top registration official, testified that nothing at all about the information on the sex offender registry would change if Plaintiff were permitted to legally change her name. SOF at ¶¶35, 36. More broadly, Ms. Knutson testified that the Name-Change Statute likely makes the state's sex offender registry less complete and less accurate than it would be if the statute were eliminated. *Id.* at ¶41. Finally, there are many less restrictive measures the state could pursue to achieve public safety goals without permanently prohibiting Plaintiff from changing her name. *See* discussion at II(A)(2), *supra*.

A statute that harshly restricts expression and is far removed from achieving any legitimate government objective fails under the First Amendment no matter what level of scrutiny is applied.

For all of the reasons set forth above, Plaintiff is entitled to summary judgment on her First Amendment challenge to the name-change statute.

## III. Plaintiff Is Entitled to Permanent Injunctive Relief

If the Court finds in Plaintiff's favor on her First Amendment claim, the Court should enter a permanent injunction prohibiting Defendant from enforcing the name-change statute against her. A permanent injunction is appropriate where the party seeking the injunction establishes the following four factors:

(1) success on the merits of her claim;
(2) that she will suffer irreparable harm in the absence of an injunction;
(3) the balance of hardships weighs in her favor; and
(4) the granting of the injunction will not disserve the public's interests.

21

*Klinger v. Conan Doyle Estate, Ltd.*, 988 F. Supp. 2d 879, 894 (N.D. Ill. 2013) (citing *Plummer v. Am. Inst, of Certified Pub. Accountants*, 97 F.3d 220, 229 (7th Cir. 1996)). Here, Plaintiff meets all four factors.

### A. Plaintiff Is Suffering Irreparable Harm in the Absence of Injunctive Relief and Lacks an Adequate Remedy at Law

Every day that Plaintiff is subjected to the Name-Change Statute she suffers an ongoing and irreparable loss of constitutional freedoms. It is well established that the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Bell v. Keating*, 697 F.3d 445 (7th Cir. 2012) ("As a general matter, a plaintiff who wishes to engage in conduct protected by the Constitution, but proscribed by a statute, successfully demonstrates an immediate risk of injury.") Where, as here, deprivation of a constitutional right is alleged, "most courts hold that no further showing of irreparable injury is necessary." *Ezell v. City of Chicago*, 651 F. 3d 684 (7th Cir. 2011) (quoting Alan Wright *et al.*, Federal Practice and Procedure §2948.1 (2d ed. 1995)).

In addition, Plaintiff lacks an adequate remedy at law because a damages suit will not halt or remedy the harm that Plaintiff suffers due to the continued enforcement of the Name-Change Statute against her. *Illinois Migrant Council v. Pilliod*, 540 F. 2d 1062 (7th Cir. 1976) ("Plaintiffs also established that defendants' conduct caused irreparable harm because the wrongs inflicted were not readily measurable in terms of monetary damages and the recovery of damages alone would

not insure the cessation of such invasions in the future."); *Mathias v. Accor Economy Lodging, Inc.,* 347 F. 3d 672, 677 (7th Cir. 2003), ("[T]o limit the plaintiff to compensatory damages would enable the defendant to commit the offensive act with impunity provided that he was willing to pay.")

## B. The Balance of Harms Tips in Plaintiff's Favor

An injunction is appropriate because the balance of hardships tips in Plaintiff's favor and the public interest would not be disserved by granting injunctive relief. As detailed above, the state's top registration official testified that, if Plaintiff is permitted to legally change her name to Karen Krebs, nothing at all would change about the information that appears on the state's sex offender registry. Plaintiff would continue to abide by her registration requirement, and both the names "Karen" and "Kenneth" would continue to appear on the registry. Thus, there can be no claim that public safety would be compromised by granting injunctive relief.

Moreover, the public has a powerful interest in protecting constitutional rights. *See ACLU v. Alvarez*, 679 F.3d 583, 589-90 (7th Cir. 2012) ("[T]he public interest is not harmed by preliminarily enjoining the enforcement of a statute that is probably unconstitutional.") Conversely, Defendant has no legitimate interest in infringing upon Plaintiff's constitutional rights. *Joelner v. Vill. Of Wash. Park*, 378 F.3d 613, 620 (7th Cir. 2004).

## CONCLUSION

For all of the reasons set forth above, Plaintiff respectfully requests that this Honorable Court grant summary judgment on Plaintiff's claim that the Name-Change Statute, Wis. Stat. §301.47(2)(a), violates the First Amendment and grant a permanent injunction prohibiting Defendant from continuing to enforce Wis. Stat. §301.47(2)(a) against her.

Respectfully submitted,

/s/ Adele D. Nicholas
/s/ Mark G. Weinberg
*Counsel for Plaintiff*

Law Office of Adele D. Nicholas
5707 W. Goodman Street
Chicago, Illinois 60630
(847) 361-3869
adele@civilrightschicago.com

Law Office of Mark G. Weinberg
3612 N. Tripp Avenue
Chicago, Illinois 60641
(773) 283-3913
mweinberg@sbcglobal.net