IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

KAREN KREBS,

      Plaintiff,

  v.                                Case No. 19-cv-634

MICHAEL GRAVELEY,

      Defendant.

## DEFENDANT'S COMBINED BRIEF SUPPORTING HIS MOTION FOR SUMMARY JUDGMENT AND OPPOSING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION

Plaintiff, a convicted sex offender, asserts that Wis. Stat. § 301.47(2)(a), which prevents a sex offender from changing his or her name, violates her right to free speech. [1] Plaintiff's legal name is Kenneth Krebs, as it was at the time of her conviction for sexually assaulting her own daughter. *See Krebs v. Schwartz*, 212 Wis. 2d 127, 568 N.W.2d 26 (Ct. App. 1997). Because she is transgender, Plaintiff wants to legally change her name to "Karen Krebs." However, because she fears prosecution by her district attorney, Defendant Michael Gravely, she seeks declaratory relief that Wis. Stat. § 301.47(2)(a) is

---

[1] This brief uses female pronouns to respect Plaintiff Krebs's gender identity.

unconstitutional as applied to her and a permanent injunction against Defendant barring prosecution.

Krebs's First Amendment claim fails for three reasons. First, Krebs's argument that the statute compels speech, and that makes it a content-based regulation of speech subject to strict scrutiny, has no basis in law. Wisconsin Stat. § 301.47(2)(a) controls conduct, not speech. Thus, because the First Amendment is not implicated, its governmental purpose of preventing sex offenders from disappearing into society where they may offend again, survives rational basis review. Second, to the extent the statute implicates speech incidentally, it is constitutional because it is content-neutral and narrowly tailored to achieve the aforementioned purpose. Third, Krebs again has no support for her novel theory that Wisconsin's name-change procedure is a limited public forum and Wis. Stat. § 301.47(2)(a) prevents her access to it. And even it if were such a forum, the statute does not violate the First Amendment because the restriction on Krebs's speech is reasonable in light of the forum's purpose and not viewpoint discriminatory.

Because there is no dispute of material fact, and, as a matter of law, Wis. Stat. § 301.47(2)(a) is not unconstitutional as applied to Plaintiff Krebs, Defendant Graveley is entitled to summary judgment.

## STATEMENT OF FACTS

Defendant hereby incorporates his responses to Plaintiff's proposed findings of fact, filed separately. And Defendant's own proposed findings of fact ("DPFOF") in support of his motion for summary judgment (and in opposition to Plaintiff's motion for summary judgment), also filed separately, are referenced throughout the Argument section of this brief.

## SUMMARY JUDGMENT STANDARD

Summary judgment is required when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) (citation omitted).

# ARGUMENT

**I.   Because Wis. Stat. § 301.47(2)(a) does not compel speech, the First Amendment is not implicated, and the law survives rational basis review.**

Krebs's first argument in support of her summary judgment motion is a wholly novel one: Wis. Stat. § 301.47(2)(a) is compelled speech because it forces her to disclose and respond to a name that does not comport with who she is. (Dkt. 22:16.) This, in turn, would require the Court to review the law under strict scrutiny, which it would not survive as applied to her. (Dkt. 22:17.) This compelled-speech claim fails because this state statute prohibiting a sex offender from changing her legal name proscribes conduct, it does not compel speech. As a result, the First Amendment is not implicated and Wis. Stat. § 301.47(2)(a) easily survives rational basis review.

**A.   Wisconsin Stat. § 301.47(2)(a) does not compel speech.**

The Supreme Court has classified "compelled expression [challenges] in two categories of cases: true 'compelled-speech' cases, in which an individual is obliged personally to express a message he disagrees with, imposed by the government; and 'compelled-subsidy' cases, in which an individual is required by the government to subsidize a message he disagrees with, expressed by a private entity." *Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 557 (2005). Krebs's claim is neither.

### 1.    Krebs's argument fails for lack of legal authority.

Krebs's compelled-speech theory is a novel one and, unsurprisingly, has no case law in support. This sinks her theory.

The Seventh Circuit has repeatedly made it clear that arguments without legal authority should be disregarded. *See M.G. Skinner & Assocs. Ins. Agency v. Norman-Spencer Agency*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."); *United States v. Bitterman*, 320 F.3d 723, 727 n.1 (7th Cir. 2003) ("We will not entertain [defendant's] half-hearted and conclusory argument, as it lacks legal or factual support of any kind."). Indeed, "a litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority, forfeits the point." *Tyler v. Runyon*, 70 F.3d 458, 464 (7th Cir. 1995).

It makes no difference that the claim is a (supposed) constitutional one. *See United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003) ("We have repeatedly warned that 'perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues)'.") (quoting *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991)). And "[i]t is not the obligation of [the] court to research and construct the legal arguments open to parties, especially when they are represented by counsel." *Beard v. Whitley Cty. REMC*,

Case 2:19-cv-00634-JPS   Filed 01/24/20   Page 5 of 31   Document 27

840 F.2d 405, 408–09 (7th Cir. 1988). This Court has explained that it is "under no obligation to research and construct a plaintiff's claims from whole cloth." *Braun v. Abele*, No. 15-CV-252-JPS, 2015 WL 3904960, at *4 (E.D. Wis. June 25, 2015).

Here, Krebs devotes less than two pages to her argument that Wis. Stat. § 301.47(2)(a) compels her speech. And, notably, she cites no case law at all— neither state nor federal, neither trial nor appellate court—supporting her proposition that a state criminal statute prohibiting sex offenders from changing their name compels speech. As to the decision she references as legal background, *Janus v. Am. Fed'n of State, Cty., and Mun. Emp., Council 31*, 138 S. Ct. 2448 (2018), it is inapposite because it concerned a non-criminal state law about *subsidized* compelled speech. Because of this complete absence of legal authority in her favor, and the fact that Krebs is represented by counsel, this Court has no duty to look for case law in support of her position, or to construct and develop a compelled speech argument for her. For these reasons, Krebs's compelled speech argument can be disregarded, altogether, and her motion denied.

## 2. Wisconsin Stat. § 301.47(2)(a) does not prohibit Krebs from speaking.

Krebs's argument that Wis. Stat. § 301.47(2)(a) compels speech is also unpersuasive. It does not prohibit her from speaking.

Plaintiff does and may use the name "Karen" in arenas where she has free speech rights. Krebs admits that she uses Karen for self-identity purposes. (Dkt. 22:11–12.) Indeed, even the Wisconsin Department of Corrections (DOC), which controls the sex offender registry with which Krebs must comply, does not prevent her from identifying herself by the name Karen. The Director of the Sex Offender Registry Programs testified that Krebs is free, despite Wis. Stat. § 301.47(2)(a), to continue to identify herself as Karen. (DPFOF ¶ 3.) Because "Karen Krebs" was registered as an alias by Plaintiff before enactment of Wis. Stat. § 301.47(2)(a), she does not violate the law by going about her life as "Karen Krebs." (Dkt. 23 ¶ 22, 32; DPFOF ¶ 3.) And Krebs may tell other persons that while her legal name is "Kenneth," she prefers to call herself "Karen" and ask others to call her that name, too. (Dkt. 23 ¶ 22; DPFOF ¶ 3.) Moreover, Krebs even filed this lawsuit under "Karen" without objection.

Krebs is free to use the name "Karen" in places in which she is entitled to free speech. Wisconsin Stat. § 301.47(2)(a) does not prohibit her speech.

### 3. Wisconsin Stat. § 301.47(2)(a) does not compel Krebs to speak.

Wisconsin Stat. § 341.07(2)(a) also does not compel Krebs to speak. Compelled speech jurisprudence does not support Krebs's theory.

The decisions finding that speech is compelled are not at all similar to this case. For instance, Wis. Stat. § 301.47(2)(a) does not require Krebs

7

to communicate a government message. *See, e.g., Wooley v. Maynard*, 430 U.S. 705 (1977) (holding that New Hampshire could not require motorists to display state motto "Live Free or Die" on license plate); *West Va. State Bd. of Ed. v. Barnette*, 319 U.S. 624 (1943) (holding that West Virginia could not require schoolchildren to recite the Pledge of Allegiance or salute the flag). It does not require Krebs to endorse another speaker's message. *See, e.g., Hurley v. Irish–American Gay, Lesbian and Bisexual Group of Boston, Inc.*, 515 U.S. 557, 566 (1995) (holding that state law cannot require a parade to include a group whose message the parade's organizer does not wish to send). And Wis. Stat. § 301.47(2)(a) does not compel Krebs to provide financial support to fund speech with which she disagrees. *See, e.g., Janus*, 138 S. Ct. 2448 (2018) (holding that public employees could not be forced pay union dues toward collective bargaining without consent).

Krebs nonetheless argues for compelled speech because, at times, she is forced to disclose her legal name, such as on forms and her government ID. (Dkt. 22:16–17.) She claims that she is being forced to communicate information about her identity and herself "that is false and to which she strongly objects." (Dkt. 22:17.) Krebs also claims that Wis. Stat. § 301.47(2)(a) forces her to "explain that she is transgender," which causes "embarrassing and uncomfortable conversations with strangers." (Dkt. 22:17.) There are three problems with these arguments.

First, as explained above, Krebs was the one, not the State, who began using "Kenneth" in the first instance. (Dkt. 23 ¶ 24.) One's legal name identifies a person for legal, administrative, or other official purposes. Krebs, of course, used her legal name, in speech and paperwork, prior to her criminal conviction. (Dkt. 23 ¶ 24.) Second, providing her legal name when applying for governmental benefits and entering a building that requires a government ID are not mandated by Wis. Stat. § 301.47(2)(a). Same goes for prospective employers, banks, and medical providers. Other rules so require; it is not Wis. Stat. § 301.47(2) that mandates disclosure. *See supra* I.A.4. Third, Wis. Stat. § 301.47(2)(a) does not compel Krebs to disclose her transgender status to strangers. That is Krebs's choice. Thus, Wis. Stat. § 301.47(2)(a) is not the thing that "[m]andat[es] speech that a speaker would not otherwise make." *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.,* 487 U.S. 781, 795 (1988).

On its face, Wis. Stat. § 301.47(2)(a) does not mandate any speech and, therefore, it does not compel Krebs to speak.

### 4. Wisconsin Stat. § 301.47(2)(a) regulates conduct, not speech.

Far from compelling speech, the statute prohibits an action: prohibiting all sex offenders from *changing* their name. This law therefore regulates conduct; it does not compel speech.

"In most cases, the government may regulate conduct without regard to the First Amendment because most conduct carries no expressive meaning of First Amendment significance." *Schultz v. City of Cumberland*, 228 F.3d 831, 841 (7th Cir. 2000).

One Supreme Court decision illustrates this regulation of conduct. In *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47 (2006), the Supreme Court upheld the Solomon Amendment, a federal law requiring law schools receiving federal funds to allow military recruiters on campus. Some law schools did not agree with the military's treatment of gay enlistees, so they claimed that the law compelled speech with which they disagreed. *Rumsfeld,* 547 U.S. at 62. The Court rejected the argument, holding that "[t]here is nothing in this case approaching a Government-mandated pledge or motto that the school must endorse." *Id*. The Court also explained that "[t]he Solomon Amendment, unlike the laws at issue in those cases, does not dictate *the content* of the speech at all." *Id*. (emphasis added). Finally, speech was "only 'compelled' if, and to the extent, the school provides such speech for other recruiters." *Id.*

Here, Wis. Stat. § 341.07(2)(a) applies only by virtue of Krebs's criminal conduct. Convicted sex-offenders like Krebs, solely by virtue of their sex-based crime, are the only group affected by the statute. The law prohibits a convicted sex-offender from disappearing into the community by changing her name and

assuming a new legal identity. The law was enacted to prohibit this kind of *conduct*. (DPFOF ¶ 4; Dec. of Counsel, Ex. B.) Further, as explained above, Krebs's use of the name "Kenneth" is only "compelled" *if she chooses* to apply for a bank loan, obtain a government issued ID, etc. Like the Solomon Amendment, Wis. Stat. § 341.07(2)(a) on its face does not direct Krebs to speak at all, much less mandate content.

### 5. A sex offender changing one's name is not inherently expressive conduct.

Although Wis. Stat. § 341.07(2)(a) does not impermissibly regulate speech, Krebs argues that the expressive nature of the conduct regulated brings that conduct within the First Amendment's protection. (Dkt. 22:12.) She is wrong.

In *United States v. O'Brien*, 391 U.S. 367, 376 (1968)*,* the Supreme Court recognized that some forms of "symbolic speech" deserved First Amendment protection. But the Court did not agree that "conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." *Id.* Instead, subsequently in *Texas v. Johnson,* 491 U.S. 397, 406 (1989), the Court extended First Amendment protection only to conduct that is inherently expressive. In *Johnson*, flag burning was "sufficiently expressive to warrant First Amendment protection." *Rumsfeld*, 547 U.S. at 66; *see also Schulz*, 228 F.3d at 841. Here, the conduct proscribed by the state statute—a

sex offender changing her name—is wholly unlike flag burning; it is not "inherently expressive" conduct. And, just as Krebs cites no legal authority that a statute prohibiting a sex offender from changing her name is compelled speech, she also cites no legal authority that a sex offender changing her name is inherently expressive conduct.[2]

In sum, a sex offender's changing his or her name is not inherently expressive conduct. Nor does it compel speech. Wisconsin Stat. § 301.47(2)(a) does not implicate the First Amendment.

### B. Wisconsin Stat. § 301.47(2)(a) survives rational basis review.

Because Wis. Stat. § 301.47(2)(a) does not implicate the First Amendment, the corresponding levels of scrutiny are not warranted.[3] Although Krebs does not argue that the statute survives rational basis review, for the sake of completeness, Defendant will show that it does.

Under the rational basis standard, "a law avoids constitutional scrutiny as long as it bears a rational relationship to a legitimate government interest."

---

[2] To the extent the statute implicates Krebs's speech, it is incidental to conduct. This argument is addresses is section II.

[3] The Seventh Circuit explained that "[r]ational basis review . . . is not a level of scrutiny under the First Amendment but merely the residual level of scrutiny that courts apply to all laws not involving a suspect class or infringing a fundamental right." *See Wis. Educ. Ass'n Council v. Walker*, 705 F.3d 640, 657 n.12 (7th Cir. 2013) (citing *Ezell v. City of Chi.*, 651 F.3d 684, 701 (7th Cir. 2011)).

Case 2:19-cv-00634-JPS   Filed 01/24/20   Page 12 of 31   Document 27

*Wis. Educ. Ass'n Council v. Walker*, 705 F.3d 640, 653 (7th Cir. 2013). The state is not required to "actually articulate" the law's purpose or "produce evidence to sustain the rationality" of the classification. *Id.* (quoting *Heller,* 509 U.S. at 320.) On the contrary, "the law is presumed constitutional." *Id.* "This basis need not be in the record so long as it finds 'some footing in the realities of the subject addressed by the legislation.'" *Id.* (citing *Heller,* 509 U.S. at 321).

The purposes of Wis. Stat. § 301.47(2)(a) are: [1] to prohibit sex offenders from remaining "anonymous" in the community, [2] to allow the crime victim to track the whereabouts of the person who committed an offense against him or her; and [3] to allow law enforcement to determine whether the person is required to register as a sex offender. Put another way, Wisconsin has an interest in preventing sex offenders from concealing their convictions by assuming new names, thereby allowing their victims, the public, and law enforcement to know their whereabouts. Wisconsin Stat. § 301.47(2)(a) fulfills those purposes. If a sex offender were allowed to change his or her name to one different than the one convicted under, he or she could avoid monitoring and detection by the victim, public, and law enforcement, thereby making the public less safe.

Krebs points to the fact that, in her case, DOC already has "Karen Krebs" as an alias on record, so any search on the sex offender registry website for that name will already locate her. (Dkt. 22:9, 14–15.) Krebs thus contends that

it is not rational to prevent her from changing her name to one already on the registry. Krebs's as-applied argument is enticing at first blush, but upon further review it is far too limited, as it only focuses on Wis. Stat. § 301.47(2)(a)'s relationship with the public-facing website aspect of the sex offender registry. That is, Krebs's as-applied argument assumes that the statute cannot exist without the sex offender registry or its public website. She is wrong.

Although one of its purposes was closing a loophole in the sex offender registry, Wis. Stat. § 301.47(2)(a) makes no reference to the sex offender registry on its face. The specific law Krebs challenges simply makes it a crime for a sex offender to change his or her name. It has a purpose separate and distinct from the registry: preventing the convicted sex offender from disappearing into society by adopting a new legal name and thereby preventing both victim and law enforcement from monitoring his or her whereabouts in society. Despite Krebs's focus on the statute's connection to the sex offender registry, she does not address this lack of express connection in Wis. Stat. § 301.47(2)(a)'s text.

Moreover, Krebs's focus on the public-facing website aspect of the sex offender registry is also shortsighted. That particular website is but one component of the registry. (DPFOF ¶ 8.) It is one tool of many used in educating and informing the public and law enforcement about sex offenders in the

community. (DPFOF ¶ 8.) DOC provides presentations and training to the public and law enforcement. (DPFOF ¶ 11.) And law enforcement will use targeted and community notification mechanisms about a sex offender in the community, such as specific communication to youth-based organizations and more general door-to-door fliers. (DPFOF ¶ 10.) Nor can Krebs reasonably argue that every single member of the public knows about or uses the public-facing sex offender registry website. It is rational to assume that certain members of society are not Internet-savvy and cannot or do not use this website to track the whereabouts of convicted sex offenders. For those persons, Plaintiff is only known as "Kenneth Krebs," the individual convicted of sexually assaulting her daughter. Therefore, if Plaintiff were to be able to change her name to "Karen Krebs," "Kenneth Krebs"—the convicted sex offender—would no longer exist. Wisconsin Stat. § 301.47(2)(a) protects the public from this possibility, regardless of what the public-facing sex offender registry website may show.

Krebs's next argument that Wis. Stat. § 301.47(2)(a) makes the public less safe by undermining Wisconsin's important interests is unpersuasive. (Dkt. 22:19–20.) While it is true that, if Krebs were to report to DOC that other people were calling her by a name not listed as an alias on record, DOC would not add that name, it is not because of Wis. Stat. § 301.47(2)(a). Instead, it is because of Wis. Stat. § 301.47(2)(b), which prohibits a registered sex offender

from "[i]dentifying himself or herself by a name unless the name is one by which the person is identified with the department" on the registry. Likely because such a scenario implicates the speech of other people, not Krebs, Plaintiff has expressly acknowledged that she does not challenge the constitutionality of that provision. (*See* Dkt. 22:7–8 n.4.) Regardless, DOC informs a sex offender in this scenario that he or she cannot use this alias and should tell others to stop using it.

Wisconsin's interest in allowing the victim, law enforcement, and public to be aware of the whereabouts of a sex offender like Krebs is certainly rational, and this purpose is achieved by preventing her from concealing her identity through a name change. Therefore, Wis. Stat. § 301.47(2)(a) survives rational basis review as applied to Plaintiff Krebs.

## C. Wisconsin Stat. § 301.47(2)(a) does not warrant intermediate First Amendment scrutiny.

Krebs argues that Wis. Stat. § 301.47(2)(a) fails a lesser level of First Amendment scrutiny. (Dkt. 22:25–26.) But there is no reason to review the statute under this intermediate level of scrutiny because it does not apply to this case in the first place. Krebs cites in support only an inapposite Supreme Court decision, *McCutcheon v. FEC*, 572 U.S. 185 (2014). *McCutcheon* is a campaign financing case, not a compelled speech case. In fact, *McCutcheon* does not even discuss compelled speech at all. Also, the intermediate level of

scrutiny from *McCutcheon* that Krebs cites (Dkt. 22:25), quotes another inapposite case, *Bd. of Trustees of State Univ. of New York v. Fox*, 492 U.S. 469 (1989). *Fox* is a case about commercial speech, not compelled speech. *Fox,* 492 U.S. at 476–77. As the Supreme Court explained in *Janus*, "Our free speech cases have identified 'levels of scrutiny' to be applied in different contexts . . . ." 138 S. Ct. at 2464. Krebs has not shown that this intermediate level of scrutiny applies in this context or would apply even if this were a true compelled speech case.[4]

****

Defendant Gravely is entitled to summary judgment because Krebs's First Amendment speech claim has no basis in First Amendment precedent. Further, the First Amendment is not implicated because Wis. Stat. § 301.47(2)(a) is not compelled speech and does not regulate inherently expressive conduct. The law survives rational basis review, the proper level of scrutiny. This Court's analysis ends here and it can enter summary judgment in Defendant's favor.

---

[4] To the extent the First Amendment is applicable, it survives the only applicable standard of review—the *O'Brien* standard of review, as explained below. *See supra* sec. II.

**II. Even assuming Wis. Stat. § 301.47(2)(a) implicates the First Amendment by regulating conduct with an incidental burden on expression, it meets the *O'Brien* standard of review.**

Even if Wis. Stat. § 301.47(2)(a) implicates the First Amendment, assuming the law regulates non-speech *conduct* and imposes an *incidental* burden on expression, it does not violate it. If such a statute is content-neutral, it "need only satisfy the 'less stringent' standard from *O'Brien* for evaluating restrictions on symbolic speech." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000) (citation omitted). Wisconsin Stat. § 301.47(2)(a) survives the *O'Brien* standard.

**A. Wisconsin Stat. § 301.47(2)(a) is content-neutral.**

"Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2227 (2015). Determining whether a law is content-neutral is a two-step inquiry. First, courts, using a "commonsense meaning of the phrase 'content based,'" consider "whether a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys." *Id.* If the regulation is content-neutral on its face, a law can still be considered content-based if the law cannot be "justified without reference to the content of the regulated speech" or if the law was adopted because of the government's disagreement with the message the

speech conveys. *Id.* (citation omitted). This second step then looks "to the law's justification or purpose." *Id.* at 2228.

### 1. Wisconsin Stat. § 301.47(2)(a) is content-neutral on its face.

First, Wis. Stat. § 301.47(2)(a) is content-neutral on its face. In *Reed*, the Court considered a town ordinance regulating the posting of signs in the town. This ordinance treated signs differently based on the sign's purpose and message. For example, it allowed signs with political messages to be posted for a longer period of time and in larger spaces than signs advertising the date and location of a church service. *Id.* at 2224–25. By expressly discriminating based upon the content of the sign, the Court held that the ordinance was a content-based restriction on speech. *Id.* at 2227.

In addition to the ordinance in *Reed*, the Supreme Court has held a law prohibiting the sale of "violent" video games to minors to be content-based, *see Brown v. Entertainment Merchants Ass'n*, 564 U.S. 786 (2011), as well as a law criminalizing the creation, possession, or sale of a depiction of animal cruelty, *see U.S. v. Stevens*, 559 U.S. 460, 468 (2010). As in *Reed*, these content-based regulations all expressly discriminated against particular content based upon the message.

Here, Wis. Stat. § 301.47(2)(a) is content-neutral on its face. Unlike the ordinance in *Reed*, the violent video game prohibition in *Brown*, and the law

criminalizing content depicting animal cruelty in *Stevens*, Wis. Stat. § 301.47(2)(a) does not discriminate based upon the content of a particular message. On its face, using the Supreme Court's "common sense" approach in *Reed*, Wis. Stat. § 301.47(2)(a) is content-neutral because the prohibition on name change applies to *all* convicted sex offenders regardless of any particular message.

Because Wis. Stat. § 301.47(2)(a) is content-neutral on its face, this Court must consider, under the second step of the content-neutral analysis in *Reed*, whether the law is also content-neutral because it serves purposes unrelated to controlling speech.

> **2.  Wisconsin Stat. § 301.47(2)(a) is also content-neutral because it serves purposes unrelated to controlling speech.**

The Legislature's purpose in enacting Wis. Stat. § 301.47(2)(a) is unrelated to controlling speech. On this point, the Supreme Court explained, "[t]he government's purpose is the controlling consideration. A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers but not others." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

In *Ward*, a concert organizer for Rock Against Racism challenged a New York City regulation requiring bands performing at a bandshell in Central Park to use the city's sound equipment and a sound engineer provided by the

city. 491 U.S. at 784. The ordinance was designed to control the noise level to provide sufficient but not excessively-loud sound to accommodate others in and around Central Park desiring less noise. *Id.* at 786–87. The Court noted that the city's justification for the ordinance was "to control noise levels at bandshell events" while "avoid[ing] undue intrusion into residential areas and other areas of the park." *Id.* at 792. Thus, the regulation "has nothing to do with content." *Id.* (citation omitted).

Like the ordinance in *Ward*, a review of the Legislature's purpose in enacting Wis. Stat. § 301.47(2)(a) shows that it has nothing to do with content. Rather, Wis. Stat. § 301.47(2)(a) was enacted as a corollary to the sex offender registry. That law, Wis. Stat. § 301.45, requires sex offenders to register but it does not prevent them from legally changing their names to circumvent that law. Wisconsin Stat. § 301.47(2)(a) fills that void. Absent such a law, convicted sex offenders could circumvent the registry and disappear into the community by simply changing their legal name, depriving their victims, the public, and law enforcement of their whereabouts. In fact, the State estimated that Wis. Stat. § 301.47(2)(a) would prevent, on average, five convicted sex offenders from legally changing their names every year. (DPFOF ¶ 6.) Filling this gap to protect the public and assist law enforcement was the law's purpose. This purpose is entirely unrelated to speech content, so the law is content-neutral.

Indeed, Krebs concedes this point. (Dkt. 22:24 ("[T]he statute's restrictions are not directly aimed at suppressing speech.").)

**B.    Wisconsin Stat. § 301.47(2)(a) satisfies the *O'Brien* test as it promotes a substantial government interest that would be achieved less effectively absent the law.**

Having established that the Wis. Stat. § 301.47(2)(a) is content-neutral, it is subject to review under the test first established in *O'Brien*. And it passes this test.

In *O'Brien*, the Supreme Court considered whether a federal statute that criminalized the destruction of draft cards violated O'Brien's First Amendment right to express himself, when he burned his draft card in protest of the Vietnam War. After determining that the law was content-neutral on its face, the Court said that it has historically "held that when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." *O'Brien,* 391 U.S. at 376. The Court then crafted a four-part test to evaluate content-neutral laws that incidentally infringe on First Amendment rights. Such a law is constitutional if it: (1) is within the government's constitutional power; (2) furthers an important or substantial governmental interest; (3) if the governmental interest is unrelated to the suppression of free expression; and,

(4) if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest. *Id.*

Wisconsin Stat. § 301.47(2)(a) is constitutional under *O'Brien*. As to the four *O'Brien* factors, Krebs concedes that Wisconsin meets the first and third elements. (Dkt. 22:24.) As for the other two elements, Wis. Stat. § 301.47(2)(a) satisfies those as well.

### 1. Wisconsin Stat. § 301.47(2)(a) furthers an important or substantial government interest.

Wisconsin Stat. § 301.47(2)(a) furthers an important or substantial government interest: protecting society from convicted sex offenders.

The Supreme Court has said that sex offenders pose unique concerns for the public and state governments. "Sex offenders are a serious threat in this Nation. . . . When convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault." *McKune v. Lile*, 536 U.S. 24, 33 (2002). In a case upholding the constitutionality of a state's sex offender registry law, the Court wrote, "Empirical research on child molesters, for instance, has shown that, "[c]ontrary to conventional wisdom, most reoffenses do not occur within the first several years after release," but may occur "as late as 20 years following release." *Smith v. Doe*, 538 U.S. 84, 104 (2003).

Case 2:19-cv-00634-JPS   Filed 01/24/20   Page 23 of 31   Document 27

As these cases illustrate, Wisconsin has a substantial interest in keeping track of convicted sex offenders by ensuring they live by the legal name under which they were convicted under. Wisconsin Stat. § 301.47(2)(a) furthers that important governmental interest. Indeed, prior to the enactment of Wis. Stat. § 301.47(2)(a), the Waukesha Police Department encountered a convicted sex offender who had legally changed his name to avoid the registry. (DPFOF ¶ 5.)

### 2. Wisconsin Stat. § 301.47(2)(a) is no greater than is essential to the furtherance of that interest.

In addition to furthering the important or substantial government interest in protecting the public from convicted sex offenders, Wis. Stat. § 301.47(2)(a) is no greater than is essential to the furtherance of that interest.

Krebs argues that that the law is too broadly crafted as to her because "Karen" is already listed as an alias and that simply registering aliases on the sex offender registry will accomplish the same interest. (Dkt. 22:20.) This argument misses the mark because a content-neutral law survives review under *O'Brien* based upon its *general* applicability, without regard to Krebs's particular circumstances. "The First Amendment does not bar application of a neutral regulation that incidentally burdens speech merely because a party contends that allowing an exception *in the particular case* will not threaten important government interests." *United States v. Albertini*, 472 U.S. 675, 688 (1985) (emphasis added).

In *Albertini*, the Court considered a challenge to a content-neutral federal law that made it a criminal offense to enter onto a military base after having been removed or ordered not to reenter (bar order). *Id.* at 677. Albertini, who had previously received a bar order, was convicted after reentering a base to protest. *Id.* at 678. On appeal, he argued that the law violated his right to free speech. Under the *O'Brien* factors, he argued that the law was not sufficiently narrow and offered narrower alternatives. *Id.* at 689. However, such alternatives, the Court explained, "misapprehend" the *O'Brien* standard. *Id.* at 688. Instead, "[r]egulations that burden speech incidentally . . . must be evaluated in terms of their general effect. Nor are such regulations invalid simply because there is some imaginable alternative that might be less burdensome on speech." *Id.* at 689–90. Rather, "an incidental burden on speech is no greater than is essential, and therefore is permissible under *O'Brien*, so long as the neutral regulation promotes a substantial governmental interest that would be achieved less effectively absent the regulation." *Id.* at 689.

Here, Wis. Stat. § 301.47(2)(a) is no greater than essential because the government's substantial interest in preventing sex offenders from disappearing into the community would be achieved less effectively absent the law. As noted above, law enforcement had encountered a convicted sex offender who had legally changed his name precisely to avoid the registry and disappear into the community. Further, the Wisconsin Department of Health and Family

25

Services estimated that the law would prevent, on average, five convicted sex-offenders in Wisconsin each year from doing the same thing.

Wisconsin Stat. § 301.47(2)(a) thus satisfies *O'Brien* review and is therefore constitutional.

## III. The State's name change process is not a limited public forum, but even if it were, Wis. Stat. § 301.47(2)(a) is a reasonable restriction in light of the forum's purpose and does not constitute viewpoint discrimination.

Krebs alternatively argues that Wis. Stat. § 301.47(2)(a) is unconstitutional "because the state has created a limited public forum for self-expression through government-authorized name changes, and the restrictions it imposes are not reasonable in light of the purposes of the forum it has created." (Dkt. 22:20.) This argument is wholly without merit.

As the *only* case cited in support of this argument, Krebs relies upon *Rosenberger v. Rector and Visitors of the Univ. of Virginia*, 515 U.S. 819 (1995), for the proposition that "not all limited public forums are physical places." (Dkt. 22:21.) Kreb's reliance on *Rosenberger* is misplaced.

In *Rosenberger*, the University of Virginia created a program designed to encourage extracurricular student activities by establishing a student activities fund ("SAF") to pay for publication expenses of qualifying student groups. *Rosenberger,* 515 U.S. at 823–24. But the SAF expressly excluded groups engaged in "religious activities" from seeking SAF payment. *Id.* at 825.

Case 2:19-cv-00634-JPS   Filed 01/24/20   Page 26 of 31   Document 27

When a Christian group sought payment for the expenses of publishing its Christian magazine, the University denied the request under the "religious activities" exception. *Id.* at 827.

The Supreme Court held that the University had created a "metaphysical" limited public forum when it created a fund to encourage private speech. *Id.* at 830. In doing so, the Court said stated that, under the First Amendment, the "government regulation may not favor one speaker over another." *Id.* at 828. This form of viewpoint discrimination is prohibited "even when the limited public forum is one of [the government's] own creation." *Id.* at 829. In excluding religious activities, the University had impermissibly engaged in viewpoint discrimination in the limited public forum it created. Central to the Court's holding, however, was that the University chose to "expend[ ] funds to encourage a diversity of views from private speakers." *Id.* at 834.

By enacting Wis. Stat. § 786.36—the state-sanctioned process by which one may change his or her legal name, Wisconsin has not created a metaphysical limited public forum because the law does not encourage or subsidize private speech like the SAF fund did in *Rosenberger*. Rather, the statute sets forth the proper procedures for obtaining a legal name change. And, notably, Krebs has submitted no legal authority for the proposition that

27

a state's name change procedure is a limited public forum under First Amendment jurisprudence.

Even assuming for the moment Wisconsin's name change process is a limited public forum, *Rosenberger* still does not help Krebs for two reasons. One, unlike the SAF that discriminated based upon whether the viewpoint was religious or secular, Wis. Stat. § 786.36 is completely neutral. Two, to the extent there is any authority for grafting a separate law onto a different law's limited public forum, Wis. Stat. § 301.47(2)(a) has nothing to do with viewpoint discrimination. The SAF guidelines in *Rosenberg* failed because "[t]he viewpoint discrimination inherent in the University's regulation required public officials to scan and interpret student publications to discern their underlying philosophic assumptions respecting religious theory and belief." *Id.* at 845. By contrast, Wis. Stat. § 301.47(2)(a) requires no such viewpoint discrimination. It applies to all convicted sex offenders without regard to any particular viewpoint. In short, *Rosenberger* is inapplicable.

*Rosenberger* aside, the relevant question is whether the law encourages speech and then discriminates based upon particular viewpoints. Krebs offers no authority to support her argument that it does. And for the reasons discussed above, Wis. Stat. § 301.47(2)(a) neither encourages speech nor discriminates based upon the viewpoint of the speaker, as the SAF did in *Rosenberger*. Krebs's limited public forum theory is unpersuasive.

28

**IV.  Krebs is not entitled to a permanent injunction.**

While the Court should grant summary judgment to Defendant, in the event it does not, the question of remedy must be decided. Krebs seeks declaratory and permanent injunctive relief. (Dkt. 1:4–5; 22:22–24.) Her request for a permanent injunction should be rejected.

A permanent injunction is an "extraordinary remedy" whereby a court "directs the conduct of a party . . . with the backing of its full coercive powers." *Nken v. Holder*, 556 U.S. 418, 428 (2009) (citation omitted). However, the Supreme Court has repeatedly observed that the issuance of declaratory relief should have a strong deterrent effect rendering more coercive remedies unnecessary. *See, e.g.*, *Wooley v. Maynard*, 430 U.S. 705, 710–14 (1977); *Doran v. Salem Inn Inc.*, 422 U.S. 922, 931 (1975); *Perez v. Ledesma*, 401 U.S. 82, 124–26 (1971) (Brennan, J., concurring). When a declaratory judgment is ordered, the defendant's obligation to comply with that order is established, and "adding an injunction to the mix does little more than enjoin the defendant to obey the law, a practice [the Seventh Circuit] ha[s] criticized." *United States v. P.H. Glatfelter Co.*, 768 F.3d 662, 682 (7th Cir. 2014).

For this reason, the Seventh Circuit favors declarations over injunctions. *Badger Catholic, Inc. v. Walsh*, 620 F.3d 775, 782 (7th Cir. 2010) (citing *Horne v. Flores*, 557 U.S. 433 (2009) (discouraging the use of regulatory injunctions

in litigation against parts of state government)). The decision to grant declaratory relief over injunctive relief is a discretionary one. *Id.*

Here, Krebs seeks declaratory relief as a remedy. This is sufficient. Defendant already understands that his office would have to conform its conduct to any declaratory judgment that Wis. Stat. § 341.47(2)(a) as applied to Krebs is unconstitutional. *Id.* And Krebs has not explained—through evidence or argument—why a permanent injunction is necessary if a declaration is issued. Indeed, Krebs proposed no evidence that she is under imminent threat of prosecution or that one is underway. In short, Krebs has not shown that this Court must issue a permanent injunction against a Wisconsin district attorney when a declaratory judgment will suffice.

For these reasons, Defendant respectfully urges that the Court, only if it grants Krebs summary judgment, deny her request for a permanent injunction and only issue a declaratory judgment. [5]

---

[5] Defendant's argument in Section IV can support his positions that (1) Krebs has not established the third of four factors for a preliminary injunction (*see* Dkt. 22:26), that is, the balance of hardships does not weigh in her favor, or (2) if Krebs fulfills the four factors, this Court should exercise its discretion and deny the request for injunctive relief.

## CONCLUSION

Defendant respectfully asks this Court to grant his motion for summary judgment and deny Plaintiff's motion for summary judgment, and to enter judgment in his favor.

Dated this 24th day of January, 2020.

Respectfully submitted,

JOSHUA L. KAUL
Attorney General of Wisconsin

Electronically signed by:

s/ Steven C. Kilpatrick
STEVEN C. KILPATRICK
Assistant Attorney General
State Bar #1025452

MICHAEL D. MORRIS
Assistant Attorney General
State Bar #1112934

Attorneys for Michael Graveley

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-1792 (Kilpatrick)
(608) 266-3936 (Morris)
(608) 267-2223 (Fax)
kilpatricksc@doj.state.wi.us
morrismd@doj.state.wi.us