IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| KAREN KREBS, | ) |
| Plaintiff, | ) Case No. 2:19-cv-634 |
| v. | ) |
| | ) Judge Stadtmueller |
| MICHAEL GRAVELEY, | ) |
| Defendant. | ) |

**PLAINTIFF'S REPLY IN SUPPORT OF HER MOTION
FOR SUMMARY JUDGMENT AND RESPONSE TO
DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Plaintiff, a transgender woman, seeks to legally change her first name from Kenneth to Karen to match her gender identity and express something deeply personal about who she is, how she sees herself, and how she wishes to be seen by others. Wisconsin law, Wis. Stat. § 301.47(2)(a), permanently prohibits her from changing her name and thus forces her to use an official ID that bears a name with which she has not identified for decades. In his response brief, Defendant Graveley makes the rather remarkable claim that this case "does not implicate the First Amendment" at all because the Wisconsin statute that prohibits Plaintiff from changing her name regulates "conduct" rather than expression. Def. Br., ECF No. 27, at 2, 4, 12, 17. As shown below, Defendant's argument does not withstand scrutiny and Plaintiff is entitled to summary judgment in her favor.

## ARGUMENT

### I. The Name Change Statute Violates the First Amendment

Plaintiff has put forth four theories in support of her claim that Wisconsin's Name-Change Statute violates the First Amendment as applied to her: (1) the statute impermissibly compels Plaintiff to engage in speech to which she strongly objects (Plf. Br., ECF No. 22, at 11-15); (2) the statute impermissibly restricts speech in a limited public forum (*id*. at 16-19); (3) if analyzed under *U.S. v. O'Brien*, the statute fails because it imposes a restriction on expression greater than is essential to further an important or substantial governmental interest (*id*. at 19-20); and (4) the statute fails even if heightened scrutiny does not apply because it is not appropriately tailored to advance government objectives (*id*. at 20-21).

In response, Defendant argues first and foremost that the First Amendment does not apply and the statute should be subject only to "rational basis" review. Def. Br. at 4, 9-16. Defendant also claims that even if the Name-Change Statute is regarded as a regulation of speech, Plaintiff's First Amendment theories should be rejected. *Id*. at 4-9 (compelled speech); 16-17 (lack of appropriate tailoring); 18-25 (*O'Brien*); 26-28 (limited public forum). In the analysis below, Plaintiff shows that each of Defendant's arguments are unpersuasive because they discount the expressive character of changing one's name and give short shrift to the less restrictive alternatives that would just as effectively advance the government's interests without restricting Plaintiff's speech.

## A. The Name-Change Statute Regulates Speech and Thus 'Rational Basis' Review Is Not the Proper Standard

Defendant's arguments are based on fundamental mischaracterizations of the Name-Change Statute. Defendant mischaracterizes the Statute in two ways. First, Defendant claims the Statute does not regulate speech at all, thereby negating any First Amendment implications and subjecting the Statute only to a rational basis test. Def. Br. at 9-16. Second, in the alternative, Defendant characterizes the Statute as only "incidentally" regulating speech, thereby subjecting it to the test set forth in *United States v. O'Brien*, 391 U.S. 367 (1968), which stands for the proposition that, when speech and non-speech activities are "combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." *O'Brien* at 377. As shown below, neither of these two characterizations of the Statute withstands scrutiny.

### 1. Regulating a Person's Name Certainly Implicates the First Amendment

Defendant argues that that the Name-Change Statute simply regulates conduct, not speech. Def. Br. at 9. ("Far from compelling speech, the statute prohibits an action: prohibiting all sex offenders from *changing* their name. This law therefore regulates conduct.") Based on this, Defendant claims that the Statute only implicates rational basis review, a standard of review it easily satisfies. *Id.* at 2 ("Thus, because the First Amendment is not implicated, its governmental purpose of preventing sex offenders from disappearing into society where they may offend

3

again, survives rational basis review."); *see also id*. at 4, 12. But Defendant's characterization of the Statute is simply wrong.

To be sure, if Defendant were right that the Name-Change Statute does not implicate speech and/or expression, Defendant's analysis would have merit. But contrary to Defendant's characterization, regulating a person's name certainly implicates the First Amendment by controlling how one expresses himself and presents his identity to the world. *See* Julia Shear Kushner*, The Right to Control One's Name,* 57 UCLA L. Rev. 313, 318 (2010) (noting the "private interests in naming, … that our tradition recognizes as important to individuality and autonomy: self-expression and identity-formation. Self-expression refers to a name's role as a speech act. Identity refers to a name's function in describing and symbolizing an individual.") (*citing* Ralph Slovenko, *On Naming*, 34 Am. J. Psychotherapy 208, 208 (1980) ("A name serves many functions. It identifies, it distinguishes, it provides control, it alleviates anxiety, and it is a means of self-expression.")).

In support of its claim that the Name-Change Statute does not implicate the First Amendment, Defendant contends that the Statute only "proscribes conduct." *Id*. at 5. This isn't accurate. Even accepting that some form of "conduct" is being regulated here, the Statute at the same time implicates speech. The fact that a law prohibits a person from choosing to identify him or herself by a certain name by its very nature implicates one's expressive rights. By analogy, a law that prohibits protestors from carrying a sign certainly prohibits "conduct," but it also implicates

the First Amendment because it also necessarily restricts expression. In such situations, the "conduct" and the expression are intertwined. Notably, Defendant provides no authority for its assertion that regulating a person's name does not implicate the First Amendment.

### 2. Contrary to the State's Assertion, the Challenged Statute Does Not Only 'Incidentally' Affect Speech and Thus Does Not Satisfy the *O'Brien* Test

Next, Defendant argues that, even if it the Statute implicates speech and/or expression, it does so only "incidentally" and is thus permissible under the *O'Brien* test. *See* Def's Brief at 2; 12 at fn. 2; 18, and 22-25. But contrary to Defendant's assertion, there is nothing incidental about the speech and expressive implications of the Name-Change Statute. The Statute directly regulates a person's name and thus directly affects speech in the most intimate of ways. A regulation passes First Amendment scrutiny if its regulation of speech: (1) "is within the constitutional power of the government to enact," (2) "furthers an important or substantial government interest" that is (3) "unrelated to the suppression of free expression," and (4) "is no greater than is essential to the furtherance of the government interest." *City of Erie v. Paps A.M.*, 529 U.S. 277, 296, 301 (2000). Here, the Name-Change Statute fails because it directly and severely burdens Plaintiff's expression by permanently barring her from changing her name.

In *O'Brien* itself, the Court considered whether a ban on destroying draft cards violated the First Amendment, given that draft-card burning represented a powerful symbol of political protest at the time. The Court held that the effect on

5

expression was merely incidental to the content-neutral regulation because, as the Court explained, the statute there "plainly does not abridge free speech on its face….[It] on its face deals with conduct having no connection with speech." *O'Brien* at 375. In contrast, the Statute here directly regulates speech; the speech restrictions are not incidental byproducts of a content-neutral regulation of a larger, inclusive class of nonexpressive conduct. *See also Texas v. Johnson*, 491 U.S. 397, 403 (1989) ("If the State's regulation [of expressive conduct] is not related to expression, then the less stringent standard we announced in *United States v. O'Brien* for regulations of noncommunicative conduct controls.")

### 3. Even If the Court Finds that the Burden on Speech Is Only 'Incidental,' the Name-Change Statute Fails Scrutiny Under *O'Brien*

Even if the Court views the burden on speech imposed under the Name-Change Statute as "incidental" to a regulation of conduct, the Statute fails scrutiny under *O'Brien* because it frustrates rather than advances government interests and places a much greater burden on expression than is essential. As described in Plaintiff's opening brief (at 12-15) and discussed in §B(2) below, the evidence shows that the registry is made less accurate and less complete by the Name-Change Statute because it results in exclusion from the registry of new names or nicknames that a registrant self-reports. Plf. SOF, ECF No. 23, at ¶41. Moreover, the evidence shows that if the Name-Change Statute were eliminated, the governmental objectives (including prohibiting registrants from trying to remain anonymous in the community; allowing victims to track the whereabouts of the person who committed

an offense against them; allowing law enforcement to determine whether someone is required to register; and making information available to the public) would all be adequately addressed by enforcement of the requirement that registrants must disclose all names by which they are known to the department. *Id.* at ¶40.

## B. The Name-Change Statute Impermissibly Compels Speech

As set forth in Plaintiff's opening memorandum, the Name-Change Statute compels Plaintiff to engage in speech to which she strongly objects. Plf. Br. at 11-15. That is, because Plaintiff is prohibited from obtaining a government-ID bearing the name "Karen," she is forced to disclose and respond to the name "Kenneth" in any interaction where government-ID is required—e.g., the post office, the doctor's office, travel, banking, etc. *Id.* In turn, this requires Plaintiff to disclose and explain that she is transgender in situations where she is required to show a government ID which does not match the way she presents to the world. *Id.*

In response, Defendant argues (1) that the Statute does not compel Plaintiff to speak (Def. Br. at 6-9); (2) that the Name-Change Statute is not subject to First Amendment scrutiny because it regulates pure conduct rather than speech (*id.* at 9-11); and (3) that there is insufficient case law supporting Plaintiff's claim (*id.* at 5-6). All of Defendants' arguments are unavailing.

### 1. The Name-Change Statute Compels Plaintiff to Engage in Speech

Defendant claims that the Name-Change Statute does not compel Plaintiff to engage in speech because to the extent that Plaintiff is forced to disclose the name "Kenneth," that disclosure is not attributable to the Name-Change Statute but to

7

the rules of entities that require one to show ID (Def. Br. at 9) and/or to Plaintiff's "choice" to engage in activities that require her to show a government ID (*id.* at 11) ("Krebs's use of the name 'Kenneth' is only 'compelled' *if she chooses* to apply for a bank loan, obtain a government issued ID, etc.").

This argument flunks the smell test. State governments maintain a system of official IDs for a reason: they are widely accepted as reliable and accurate indicators of the person's identity, and thus they are regularly required for travel, entrance to government buildings, banking, and purchase of many products. *See* Plf. SOF, ECF No. 23, at ¶29-30 (describing the uncomfortable questions that arise when Plaintiff shows government ID at the bank, doctor's office, or pharmacy). Indeed, it would be difficult for anyone to function without a government-issued ID in this day and age. Thus, the inevitable result of prohibiting someone from legally changing their name is that they will have to disclose the name that appears on their government-issued ID in many everyday situations.

The decision in *Doe v. Marshall*, 367 F. Supp. 3d 1310 (M.D. Ala. 2019) is instructive on this point. There, the court ruled that a government regulation that required individuals who had been convicted of sex offenses to carry government-issued IDs identifying them as "criminal sex offenders" impermissibly compelled speech. *Id.* at 1324. Rejecting the state's argument that the plaintiffs could avoid displaying the objectionable language by using an alternative form of ID such as a passport, the court wrote that the statute "compelled [the plaintiffs] to display the offensive message" because "[s]tate-issued photo ID is a virtual necessity these

8

days. One must show ID to enter some businesses, to cash checks, to get a job, to buy certain items, and more." *Id.* at 1325.

In support of this conclusion, the *Marshall* court cited *Wooley v. Maynard,* 430 U.S. 705, 714-15 (1977), in which the Supreme Court found that a law requiring display of the New Hampshire state motto "Live Free or Die" on license plates impermissibly compelled speech because "driving an automobile [is] a virtual necessity for most Americans" and thus the license plate requirement would inevitably require the plaintiff to display the motto to which he objected. *Marshall* at 1325 ("Although New Hampshire did not force George Maynard to drive a car, driving was (and is) 'a virtual necessity for most Americans,' so the license plate message was compelled speech. Here, the State has similarly conditioned a virtual necessity of everyday life on displaying a message to others.") (citing *Wooley* at 714).

The same result should occur here. Plaintiff, like any adult, must use government ID for many everyday endeavors such as picking up mail from the post office, buying cold medicine at the drug store, applying for a job, or opening a bank account. Plf. SOF at ¶28-30. As in *Maynard*, Plaintiff is compelled to display a message with which she disagrees in all of these situations. Thus, this court should find that the Name-Change Statute compels speech.

### 2. Defendant Has Not Responded to Plaintiff's Arguments that the Statute Fails Strict Scrutiny

Regulations that compel speech are necessarily content-based and thus must pass strict scrutiny, which requires the government to show it has adopted the least restrictive means of advancing a compelling government interest. *See* Plf. Br. at 12-

15 (*citing NIFLA v. Becerra,* 138 S. Ct. 2361, 2371 (2018); *Riley v. Nat'l Fed'n of the Blind,* 487 U.S. 781, 795 (1988); *Reed v. Town of Gilbert,* 135 S. Ct. 2218, 2226 (2015)). Defendant does not even attempt to defend the Statute under this standard. It would indeed be difficult to do so in light of the testimony of the State's top registration official, Grace Knutson, that the government objectives for sex offender registration would not be frustrated if Plaintiff were allowed to legally change her name to "Karen Krebs" (Plf. SOF at ¶38); and that if the Name-Change Statute were eliminated, the governmental objectives of prohibiting registrants from trying to conceal their identities; allowing crime victims to track the whereabouts of the person who committed an offense against them; allowing law enforcement to determine whether someone is required to register; and making information available to the public all could be adequately addressed by enforcement of the requirement that registrants must disclose all names by which they are known to the department (*id.* at ¶40).

### a. Defendant Has Not Countered the Adequacy of the Less Restrictive Measures Put forth by Plaintiff

As explained in Plaintiff's opening brief, the Name-Change Statute fails strict scrutiny because a complete and permanent ban on Plaintiff's ability to change her name is not a narrowly tailored means of advancing legitimate government goals. Plf. Br. at 10-15, 20. Plaintiff put forth six alternatives to the Name-Change Statute that would protect the governmental objectives of preventing individuals who have been convicted of sex offenses from concealing their identities or evading their

registration requirements. *Id*. at 15-16.[1] Defendant's brief does not mention these alternatives, let alone argue that they would not adequately serve the identified governmental interests.[2] To the contrary, Grace Knutson testified that the goals of informing the public and preventing individuals from concealing their status as sex offenders could be accomplished "just as effectively" if the Name-Change Statute were eliminated by requiring registrants to report any changes in names to the Department pursuant to the Registration Statute. Plf. Br. at 14. The omission of

---

[1] The alternatives Plaintiff identified were as follows: (1) requiring a registrant who wishes to change his or her name to register both the new name and the previous name with the state; (2) enforcement of the existing sex offender registration statute which makes it a felony to fail to register changes to identifying information; (3) permitting a registrant who has lived in the community without committing a new offense for a specified period of time to petition for relief from the restriction set forth in the Name Change statute; (4) enforcing the existing law requiring prior publication of a name-change petition and giving interested members of the public an opportunity to object; (5) adopting special procedures for name change requests by individuals who have been convicted of sex offenses, including giving law enforcement an opportunity to object and holding a hearing concerning whether the individual's name change would compromise public safety; and/or (6) requiring individuals who wish to change their names to submit to a criminal background check in connection with any petition for a name change and requiring the court that authorizes the name change to inform the registration authorities when a registrant legally changes his or her name. Plf. Br. at 15-16.

[2] Defendant argues briefly that the Name-Change Statute "makes no reference to the sex offender registry on its face" and thus seeks to discount Plaintiff's argument that the restrictions imposed by the Name-Change law are redundant of restrictions imposed under the Registration Statute (*i.e.*, registrants are already required to report all names by which they are known and must report any changes in their identifying information). Def. Br. at 14 ("[The Name-Change Statute] makes no reference to the sex offender registry on its face.") Defendant's argument is simply wrong. The Name-Change Statute does explicitly reference the registration statute on its face, and by its own terms, it only applies to individuals who are required to register. ECF No. 24-1 at §(2) ("A sex offender may not [change his or her name] before he or she is released … from the reporting requirements of s. 301.45 [the registration statute]"); *see also* ECF No. 24-3, Wis. Stats. 301.45 "Sex Offender Registration." Thus, all individuals subject to the Name-Change Statute are also subject to the restrictions set forth in the Registration Statute, many of which serve the same government purposes of preventing individuals from concealing their identities or criminal records.

any discussion of these alternatives from the Defendant's brief is telling because it amounts to a tacit admission that less restrictive alternatives are available and would adequately address the government's interests without the need to permanently restrict Plaintiff from legally changing her name.

### b. There Is No Evidence that Applying the Name-Change Statute to Plaintiff Is Necessary to Advance Government Interests

Similarly, Defendant has not attempted to explain how application of the Name-Change Statute to Plaintiff is necessary to advance compelling government interests. Defendant contends that the primary governmental purpose of the Name-Change Statute is to prevent individuals who have been convicted of sex offenses from "disappearing into society" by adopting new names. Def. Br. at 2, 14, 21, 25.

As pointed out in Plaintiff's opening brief, there is no risk of that happening if Plaintiff is permitted to legally change her name to "Karen," because Plaintiff is a life registrant who has already registered both "Karen" and "Kenneth" with the Department of Corrections. Plf. Br. at 14. Thus, her criminal record is linked to both names and will be for the rest of her life. *Id*. While Defendant speculates generally that an individual convicted of a sex offense may use a name change to conceal his criminal record or evade registration, wholly absent from Defendant's brief is any evidence or argument that any public safety objective would be compromised by allowing Plaintiff to change her name. This strongly supports Plaintiff's contention that the Name Change statute is unconstitutional as applied to her because it is not necessary to serve the government objectives Defendant put forth to justify it.

12

### 3. Arguments In Support of Transgender Individuals' Rights Are Necessarily New

Finally, Defendant claims that Plaintiff's compelled speech theory should be rejected because it is "novel" and not supported by adequate case law. Def. Br. at 2, 4, 5 ("Krebs's compelled-speech theory is a novel one.") But the fact that an argument is "novel" doesn't mean it's invalid. Indeed, in this context, the absence of case law directly on point isn't surprising because the legal landscape for transgender people is rapidly evolving, as courts are being called upon to consider the rights of this often marginalized population for the first time. There are currently four cases in which transgender individuals have brought challenges to statutes restricting their ability to change their names. *See Langan et al. v. Abbott et al.,* 19-cv-1182 (W.D. Texas); *Ortiz et al. v. Foxx et al.*, 19-cv-02923 (N.D. Ill.); *Talley et al. v. Shapiro et al.,* 303 MD 2019 (Pennsylvania). Of these cases, this case is the first to proceed to summary judgment. *See* Beth Schwartzapfel, *What's In a Name?,* The Marshall Project, Jan. 27, 2020 (discussing challenges to name-change laws on behalf of transgender individuals in Wisconsin, Illinois, Texas and Pennsylvania).[3]

### C. The Name-Change Statute Impermissibly Restricts Speech in a Limited Public Forum

In Plaintiff's opening brief, she analogized this case to *Rosenberger v. Rectors and Visitors of the University of Virginia*, 515 U.S. 819 (1995) for her argument that the Name-Change Statute impermissibly excludes Plaintiff from a limited public

---

[3] Available at: https://www.themarshallproject.org/2020/01/27/what-s-in-a-name

forum. Plf. Br. at 17-18. In *Rosenberger*, the Supreme Court held that a public university created a "limited public forum" for private expression by creating a fund through which it supported various forms of expression, including student publications. *Id*. at 830. Having created such a forum, the government could not exclude certain speakers from that forum unless the restriction imposed was "reasonable in light of the forum's purpose." *Id*. at 824. Plaintiff argued that Wisconsin has created a limited public forum for a particular type of private expression (*e.g.*, changing one's name) by creating a statutory process through which one may obtain government approval for his or her chosen name. Plf. Br. at 17-18. Having created such a limited public forum, the State cannot exclude Plaintiff from it in the absence of any evidence that doing so is reasonable in light of the forum's purpose. *Id*. Because there is no evidence that prohibiting Plaintiff from changing her name serves government objectives, Wisconsin's exclusion of Plaintiff from the forum is unreasonable. *Id*.

In response, Defendant argues that the Statute is constitutional under this analysis because, even assuming that the State has created a limited public forum, the Name-Change Statute is "content-neutral" and does not discriminate among "viewpoints." Def. Br. at 27, 28. However, courts have not interpreted the "limited public forum" doctrine as prohibiting only viewpoint discrimination. Rather, courts have held that where "the government excludes a speaker who falls within the class to which a designated public forum is made generally available … the government's

action is subject to strict scrutiny." *Goulart v. Meadows*, 345 F.3d 239, 250 (4th Cir. 2003); *see also Pfeifer v. City of W. Allis,* 91 F. Supp. 2d 1253, 1259 (E.D. Wis. 2000) ("If a regulation of speech in a limited public forum restricts speech of the type permitted in the forum it is subject to strict scrutiny.")

Applying that analysis here, Plaintiff prevails on her claim. The State of Wisconsin permits individuals to avail themselves of a process for changing their legal names in the absence of "sufficient cause" for prohibiting the change. Wis. Stats. §786.36(3). Plaintiff is an individual who wishes to engage in speech of the type that is typically permitted in the forum the state has created (*e.g.*, she wishes to legally change her name). Thus, the exclusion of Plaintiff from the forum can only be upheld if it meets strict scrutiny—that is, it is the least restrictive means of advancing a compelling government interest. *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 865 n.2 (7th Cir. 2006). As set forth in §I(B)(2) above, Defendant has not even argued that its application of the Name-Change Statute to Plaintiff satisfies that standard.

## II. Plaintiff Is Entitled to a Permanent Injunction

Plaintiff seeks a permanent injunction prohibiting Defendant from prosecuting her for violation of the Name-Change Statute. *See* Plf. Br. at 21-23. In response, Defendant claims that if Plaintiff prevails on the merits of her claim, her remedy should be limited to declaratory relief because some courts have expressed a preference for declaratory relief versus a permanent injunction. Def. Br. at 29-30. The case law on which Defendant relies for this principle is inapposite. For

example, in *Badger Catholic, Inc. v. Walsh*, 620 F.3d 775, 782 (7th Cir. 2010), the Seventh Circuit observed that it was not an abuse of discretion to enter a declaratory judgment rather than a permanent injunction because an injunction would have implicated ongoing supervision over the defendant-university's activities. *Id.* ("The district judge was not looking for an opportunity to take over management of the University's activity-fee program. If the entry of a regulatory injunction can be avoided by a simpler declaratory judgment, everyone comes out ahead.")

Here, in contrast, Plaintiff seeks a simple injunction prohibiting enforcement of the Name-Change Statute against her. Under similar circumstances, the Seventh Circuit has repeatedly found that an injunction is appropriate. *See e.g., ACLU v. Alvarez,* 679 F.3d 583, 591 (7th Cir. 2012) (plaintiffs were entitled to a preliminary injunction prohibiting enforcement of a statute alleged to violate the First Amendment because "existence of a statute implies a threat to prosecute"); *Wis. Right to Life State PAC v. Barland*, 664 F.3d 139, 143 (7th Cir. 2011) (remanding "with instructions to enter a permanent injunction enjoining enforcement" of a Wisconsin campaign-finance statute found to violate the First Amendment).

## CONCLUSION

For the reasons set forth above and in Plaintiff's opening memorandum of law, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor on her claim that Wis. Stat. § 301.47(2)(a) violates the First Amendment as

applied to her and grant an injunction prohibiting Defendant Graveley from enforcing the Statute against her.

Respectfully submitted,

/s/ Adele D. Nicholas
/s/ Mark G. Weinberg
*Counsel for Plaintiff*

Law Office of Adele D. Nicholas
5707 W. Goodman Street
Chicago, Illinois 60630
(847) 361-3869
adele@civilrightschicago.com

Law Office of Mark G. Weinberg
3612 N. Tripp Avenue
Chicago, Illinois 60641
(773) 283-3913
mweinberg@sbcglobal.net